**UNITED STATES of America, Appellee,**

v.

**Albert W. KOUBA, a/k/a Rusty Kouba, Appellant.**

No. 86–5174.

United States Court of Appeals, Eighth Circuit.

Submitted March 16, 1987.

Decided June 29, 1987.

---

William A. Cohan of Denver, Colo., for appellant.

Lynn E. Crooks, Asst. U.S. Atty., Fargo, N.D., for appellee.

Before WOLLMAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and MAGILL, Circuit Judge.

WOLLMAN, Circuit Judge.

Albert (Rusty) Kouba appeals his conviction for aiding others in the preparation of false income tax returns, 26 U.S.C. § 7206(2),[1] and for failing to file his own

---

**1.** 26 U.S.C. § 7206(2) (1982) provides for criminal sanctions against one who:

Willfully aids or assists in, or procures, counsels, or advises the preparation or pre-

income tax returns, 26 U.S.C. § 7203.[2]  We affirm.

Following a two-year grand jury investigation that involved the participation of three grand jury panels, Kouba was indicted on nine counts of aiding others in the preparation of false income tax returns, two counts of failing to file his own income tax returns, and one count of suborning perjury.[3]

Kouba admitted at trial that he had assisted in filing the tax returns at issue and that he had failed to file his own income tax returns for the years 1981 and 1982. He defended on the basis of a good faith misunderstanding of the requirements of the law.  He claimed that he attempted to implement a tax shelter program for his clients based on a program developed by the American Law Association (ALA).  *See United States v. Russell,* 804 F.2d 571 (9th Cir.1986); *Zmuda v. C.I.R.,* 731 F.2d 1417 (9th Cir.1984); *United States v. Dahlstrom,* 713 F.2d 1423 (9th Cir.1983), *cert. denied,* 466 U.S. 980, 104 S.Ct. 2363, 80 L.Ed.2d 835 (1984).  At the heart of this program were three foreign trusts to be established individually by each taxpayer. Property or income was transferred to and among these trusts and eventually transferred back to the taxpayer as a "gift." Some of the transactions, including the "gift" to the taxpayer, were allegedly tax-free in part because of the foreign status of the trusts.  In addition to endeavoring to implement the ALA program for his clients, Kouba had his clients take large deductions for alleged expenses the "trusts" incurred.  These deductions appeared on his clients' returns, however, as expenses from their existing ventures.

Kouba's defense at trial centered on the proposition that since the ALA program had not been determined to be illegal, he could not be convicted of assisting others in the preparation of false or fraudulent income tax returns.  Further, monies which the government contended were includable in his income were in fact "gifts" from the foreign trusts and as such not includable under the Internal Revenue Code (IRC).

At trial, however, the government avoided the issue of the legality of the tax shelter program, basing its case on the deductions Kouba had claimed for his clients and his failure to file his tax returns.  The government asserted that the main issues were whether Kouba in good faith believed that the deductions on his clients' returns were valid at the time he made them and whether he in good faith believed that he was not required to file income tax returns for the years 1981 and 1982.

The jury convicted Kouba on all counts save the count of suborning perjury.  The district court[4] thereafter sentenced him to eighteen months in prison, followed by three years of probation.

Kouba first contends that the district court erred in instructing the jury both before deliberations began and again when the jury submitted questions during deliberations.  We do not agree.

On appeal, we evaluate the adequacy of instructions by reviewing them as a whole.  *United States v. McQuarry,* 726 F.2d 401 (8th Cir.1984) (per curiam).  A district court has wide discretion in formulating appropriate jury instructions.  *Unit-*

sentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document.

**2.** 26 U.S.C. § 7203 (1982) provides in pertinent part:

Any person required under this title to * * * make a return * * * who willfully fails to * *

make such return * * * shall * * * be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $25,000 * * * or imprisoned not more than 1 year, or both, together with the costs of the prosecution.

**3.** The indictment alleged that Kouba willfully suborned or procured one of his former clients, Donald R. Stoltz, to testify falsely before the grand jury.

**4.** The Honorable Bruce M. Van Sickle, United States Senior District Judge for the District of North Dakota.

ed States v. Reda, 765 F.2d 715, 719 (8th Cir.1985). A defendant is not entitled to a particularly worded instruction where the instructions given adequately and correctly cover the substance of the requested instruction. *United States v. Reda,* 765 F.2d at 719; *United States v. Lisko,* 747 F.2d 1234, 1238 (8th Cir.1984). Nor is the defendant entitled to an instruction when the evidence does not support it. *United States v. Walker,* 817 F.2d 461 (8th Cir. 1987).

■ Kouba objects specifically to the district court's refusal to give an instruction concerning 26 U.S.C. § 2501. He argues that the statute supports his position that the money he received from foreign trusts was not includable in gross income. Section 2501, however, concerns the gift tax; it provides that a transfer of intangible property by a nonresident is not subject to a gift tax. Internal Revenue Code section 102(a), covered by Instruction 26A, provides that gross income does not include the value of property acquired by gift. If the money Kouba received from foreign trusts was a gift, it was not includable in Kouba's gross income under section 102(a), regardless of whether it was exempt from gift tax under section 2501. Therefore, had the jury accepted Kouba's theory that money he received from foreign trusts was a gift, the instruction would have directed the jury to conclude that the money was not includable in his gross income and thus that he was not a person required to file income tax returns. Accordingly, we do not find that the district court abused its discretion in failing to give Kouba's proposed additional instruction.

Kouba also objects to the district court's failure to give a jury instruction generally setting out his theory of the case.[5] Reduced to its essence, Kouba's theory of the case was that he had a good faith misunderstanding of the law, both as to the

charges of assisting in the preparation of false income tax returns and to the charges of failing to file his own income tax return.

The district court instructed the jury that in order to convict Kouba of the crimes charged, the government had to establish beyond a reasonable doubt that he willfully committed the acts prohibited by the statutes in question. In defining willfulness, the court instructed the jury that:

Defendant's conduct is not willful if he acted through negligence, inadvertence, or mistake, or due to good faith misunderstanding of the requirements of the law. It should be pointed out, however, that disagreement with the law is not a defense. It is the duty of all citizens to obey the law whether they agree with it or not.

The district court also instructed the jury that:

If a person in good faith believes that an income tax return, as prepared by him or her, truthfully reports the taxable income and allowable deductions of the taxpayer under the internal revenue laws, that person cannot be guilty of willfully preparing or presenting, or causing to be prepared or presented, a false or fraudulent return.

While good faith has no precise meaning, it encompasses, among other things, an honest intention, an absence of malice and an honest intention to abstain from taking any unconscientious advantage of another.

■ We find that these instructions adequately covered the substance of Kouba's defense theory and gave defense counsel the opportunity to make a fair and adequate argument on the theory that Kouba had a good faith misunderstanding of the law. *See United States v. Walker,* 817 F.2d 461 (8th Cir.1987); *United States v. McQuarry,* 726 F.2d at 402; *United States*

---

5. One of Kouba's proposed instructions read: You must find the defendant not guilty unless you find that the defendant knew that the foreign trust organizations he established and relied upon for figures contained in the income tax returns described in Counts 1–9 did not provide a legal basis for those figures.

This instruction assumed the existence of a foreign trust. Although Kouba advanced a theory of a foreign trust, he introduced no competent evidence to establish the existence of such entity or entities.

v. *Reda*, 765 F.2d at 719. These instructions further fairly and adequately charged the jury as to what the government had to establish to support a conviction. *See United States v. Pohlman*, 522 F.2d 974 (8th Cir.1975), *cert. denied*, 423 U.S. 1049, 96 S.Ct. 776, 46 L.Ed.2d 638 (1976).

Kouba next claims that the district court engaged in an improper colloquy with the jury and erred in its response to a question submitted concerning Kouba's tax scheme after the jury reported that it was unable to reach a verdict on all counts.[6] The court requested the jury to prepare a partial verdict and return to the courtroom. When the jury returned, the court asked if in the opinion of all the members of the jury further deliberations would be productive. During the court's questioning, one of the jurors indicated that there was some confusion on how to treat the "trusts" issue in the case. The court responded that the validity or invalidity of the trusts was not an element in the case.[7] With two jurors indicating that further deliberations were possible and the foreperson concurring, the court sent the jury back for further deliberations. Soon thereafter the jury sent a question to the court which read: "Does the intent to use the trust have validity?" The court, over Kouba's objection, responded as follows:

ANSWER: You are instructed that the questions of intent and willfulness are covered in the instructions numbered 9, 10, 11 and 12 and that these instructions must be read with reference to all other instructions previously given to the jury.

Approximately one hour later, the jury returned the verdict finding Kouba guilty on all nine counts of assisting in the preparation of false income tax returns and on both counts of failing to file his own income tax return.

Kouba contends that the district court's response to the jurors' inquiry concerning the trust was improper and amounted to a directed verdict on the issue of intent in favor of the government. He also argues that the proper answer to the jury's ques-

---

**6.** Following fourteen days of trial, the jury retired to begin deliberations at 4:13 p.m., November 7, 1985. At 3:40 p.m. the next day, it reported to the court that it was deadlocked. The court read a modified *Allen* charge and sent the jury back for further deliberations. After four more hours of deliberations, the jury reported that it was unable to reach a verdict on all counts.

**7.** The trial transcript is set forth below in relevant part:

THE COURT: Is there anything that the Court can do to resolve the confusion by the response to questions or anything else that would assist you to proceed further with your considerations?

\*   \*   \*   \*   \*   \*

[JUROR]: The use of the trusts has made it so we couldn't come to any conclusion.

THE COURT: You feel that despite the rulings of the Court that the validity or the invalidity of the trust was not an element in this case, you feel that you cannot—that that is a stumbling block to resolving the issues in this case?

[JUROR]: Yes, we do. There were some exhibits that were put in on the trusts that were given to Dale Burkhart that were—

THE COURT: What is the opinion of the rest of the members of the jury? Do you feel there's any possibility that if you go into further discussion tomorrow morning, or, if you wish, Monday morning or Tuesday morning,

that we can resolve the remaining issues? Yes, ma'am.

[JUROR]: You did make the statement just now that the trusts were not supposed to be an issue?

THE COURT: I had ruled, you will recall, that the validity of the trusts—the question of whether they're a lawful procedure, not—in the sense of affecting the taxability of money or the taxability of income, was not relevant. You will remember that I repeatedly pointed out that the issue was whether there were false entries, whether the entries were—involved a trust, the question was were the entries false.

[JUROR]: Well, I, for one, believe we can reconvene.

THE COURT: You raised your hand.

[JUROR]: It was the trusts. Is there any— would you please restate what you said?

THE COURT: I stated that my—I had ruled in the courtroom—as a matter of fact, I ruled more than once—that the nature of the charges had to do with—as to these trust matters, and other matters, incidentally, had to do with—the first nine had to do with the making of false entries, and so whether we are dealing with a valid trust or an invalid trust, whether this was a system which would lawfully allow of the reduction in the amount of tax exposure or not allow reduction in the amount of tax exposure really didn't make any difference. The key was were those claimed false entries in fact false.

tion was that the intent to use the trust did have validity.

■ We conclude that when viewed in their entirety, the statements made in response to the jury's inquiries did not constitute an abuse of discretion on the part of the trial court. *United States v. Larson*, 612 F.2d 1301 (8th Cir.), *cert. denied*, 466 U.S. 936, 100 S.Ct. 2154, 64 L.Ed.2d 789 (1980). The court had ruled during the course of the trial that whether the trust system described by Kouba was a lawful method of tax avoidance was not at issue. At issue were Kouba's willfulness, his alleged good faith misunderstanding of the law, and whether the entries made were in fact false. The court's subsequent statements to the jury were a restatement of prior instructions the court had given and did not eliminate from the jury's consideration the questions of Kouba's willfulness or good faith misunderstanding of the law. The trial court indicated only that the validity or invalidity of the trusts was not an issue in this case; it did not prevent the jury from considering the trust issue on the element of willfulness or good faith misunderstanding of the law. Furthermore, the court's response to the jury's question whether the intent to use the trust had validity again referred the jury to the original proper instruction. The trial court, therefore, did not direct a verdict for the government on the issue of willfulness but properly left this issue to the province of the jury.

Kouba next argues that the government's proof was insufficient to establish that he either willfully aided others in filing false income taxes in violation of 26 U.S.C. § 7206(2), or failed to file his own tax returns in violation of 26 U.S.C. § 7203.

In evaluating the sufficiency of evidence supporting a jury verdict, we view the evidence in the light most favorable to the government and give the government the benefit of all inferences that may be reasonably drawn from the evidence. *United States v. Long Elk*, 805 F.2d 826 (8th Cir. 1986). We will not reverse a jury verdict if there is substantial evidence to support it. *Id.* at 829.

■ To convict a person under either 26 U.S.C. § 7206(2) or 26 U.S.C. § 7203, the government must prove that defendant's act was willful. The Supreme Court has defined the term "willfully" under § 7206 and related statutes to mean a voluntary intentional violation of a known legal duty. *United States v. Pomponio*, 429 U.S. 10, 12, 97 S.Ct. 22, 23, 50 L.Ed.2d 12 (1976). *See also United States v. Pohlman*, 522 F.2d at 977. "Willful" requires "proof of a specific intent to do something which the law forbids; more than a showing of careless disregard for the truth is required." *United States v. Dahlstrom*, 713 F.2d at 1427; *see also United States v. Pohlman*, 522 F.2d at 976.

■ Kouba's reliance on *Dahlstrom* to demonstrate that he did not act willfully is misplaced. In *Dahlstrom*, the Ninth Circuit reversed the convictions of defendants who had organized a foreign trust tax shelter scheme because " 'when the law * * * is highly debatable, a defendant—actually or imputedly—lacks the requisite intent to violate it.' " *United States v. Dahlstrom*, 713 F.2d at 1428 (quoting *United States v. Critzer*, 498 F.2d 1160, 1162 (4th Cir.1974)). In the present case, however, the issue was not whether the foreign trust tax scheme was valid, but whether Kouba willfully assisted his clients in filing false claims for deductions and whether he willfully failed to file his own income taxes. There is substantial evidence in the record to support both charges. The record reveals that Kouba inflated the deductions his clients were entitled to and failed to file his tax returns for 1981 and 1982.

Kouba next argues that the district court erred in denying his motion to dismiss the indictment based on prosecutorial misconduct and grand jury improprieties. First, Kouba claims that the grand jury that indicted him was misled by the prosecution's introduction of incomplete and misleading summaries of testimony that had been given to prior grand juries. He alleges that the summaries were misleading in that they did not include supposed exculpatory evidence. Second, Kouba claims that the prosecutor abused the grand jury process

by calling witnesses solely for the purpose of having them invoke their fifth amendment privilege before the grand jury. Finally, he contends that Wendell Mongeon, a criminal investigator for the Internal Revenue Service (IRS), engaged in a variety of misconduct during the investigation into Kouba's affairs. The alleged misconduct consisted of Mongeon's indicating to witnesses that he was a "special agent of the grand jury" and administering oaths to those witnesses prior to taking their statements.

"[G]rand jury proceedings are afforded a strong presumption of regularity, and a defendant seeking to overcome that presumption faces a heavy burden." *United States v. Hintzman*, 806 F.2d 840, 843 (8th Cir.1986). The remedy of dismissal for an indictment due to grand jury abuse is appropriate only upon a showing of actual prejudice to the accused. *United States v. Carr*, 764 F.2d 496 (8th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1184, 89 L.Ed.2d 301 (1986). The district court, based on the recommendations of a federal magistrate, found no actual prejudice. Based on the record, we cannot say that such a finding is clearly erroneous.

Even assuming, however, that there were errors in the charging decision that may have followed from the conduct of the prosecution or Mongeon, the petit jury's guilty verdict rendered those errors harmless. "Except in cases involving racial discrimination in the composition of the grand jury, a guilty verdict by the petit jury excuses errors at the. grand jury level that are 'connected with the charging decision....'" *United States v. Hintzman*, 806 F.2d at 843 (citing *United States v. Mechanik*, 475 U.S. 66, 106 S.Ct. 938, 942, 89 L.Ed.2d 50 (1986)). A petit jury's "subsequent guilty verdict not only means that there was probable cause to believe that the defendant[] [was] guilty as charged, but that [he was] in fact guilty as charged beyond a reasonable doubt." *United States v. Mechanik*, 106 S.Ct. at 942. The societal costs of retrial, the Court reasoned, are too substantial to justify setting aside

the verdict because of errors in the grand jury proceeding. *Id.* at 942–43.

The judgment of conviction is affirmed.